(26 Misc. Rep. 476.)

## McCAMMON v. SHANTZ.

(Supreme Court, Special Term, Monroe County. February, 1899.)

1. PROMISSORY NOTES—DIVERSION BY PAYEE—BONA FIDE HOLDERS.
    One suing on a note diverted by the payee must show that he is a bona fide holder.

2. SAME—TRANSFER—CONSIDERATION—LEGALITY—EVIDENCE.
    A transferee of a note had purchased stock of the transferror, which proved worthless, and the latter had agreed to buy it back. The agreement was not kept, and the transferee told the transferror that, unless the stock was bought back by a certain date, he would sue the transferror, and tell parties with whom the latter was negotiating for the sale of like stock that the agreement had been broken, and that the stock was worthless. To avoid this, the note was transferred as collateral. Held, that it did not clearly appear that the threats which the transferee made were not such as he had a right to make, and hence the consideration for the transfer was not partly illegal.

8. SAME—CONSIDERATION—FORBEARANCE.

An agreement of forbearance to sue is a sufficient consideration for the transfer of a note of a third person as collateral to constitute the transferee a bona fide holder, if he is such otherwise.

Action by John L. McCammon against Moses B. Shantz. Plaintiff moves for a new trial on the minutes, after an order directing a verdict for defendant. Granted.

Brown & Poole, for the motion.

J. B. M. Stephens, opposed.

WERNER, J. This action was brought to recover upon a promissory note, executed by the defendant, for $3,750, bearing date of the 19th day of November, 1897, payable four months thereafter to the order of Francis C. Grable. This note was given for the renewal, in part, of previous notes, the first of which was given by defendant to said Grable in payment of certain mining stock purchased by the former of the latter. It was practically conceded, for the purposes of the trial of this action, that the note in suit, together with a check for $250, was given to take up a previous note for $4,000, arising out of the same transaction, and that the note in suit was diverted by said Grable, without the consent of the defendant, from the purposes for which it was given. Upon this concession, under the rule laid down in Coddington v. Bay, 20 Johns. 637, Bank v. Penfield, 69 N. Y. 505, and American Exchange Nat. Bank v. New York Belting & Packing Co., 148 N. Y. 699, 43 N. E. 168, it became necessary for the plaintiff to show that he took the note without notice, and for value. From the undisputed evidence, it appears that plaintiff had made a loan of $2,500 to said Grable, and that the note in suit, with other securities, was given by said Grable to the plaintiff as collateral security for said loan, without any agreement as to the return of said collateral upon the payment of said loan. From the testimony of the plaintiff, it appears that at the time of the making of said loan it was agreed between said Grable and the plaintiff that the former should deliver to the latter, as collateral security, certain gas bonds, and that, on account of said Grable's inability to obtain them at that time, he gave to the plaintiff the note in suit, instead of said stock. Said loan was paid by said Grable's check, dated on or about the 11th day of December, 1897. The plaintiff testifies that the proceeds of this check were not credited to him until on or about the 21st day of December, 1897. It further appears from the testimony of the plaintiff that he had purchased from Grable some of the same mining stock, for which the defendant gave Grable the notes referred to, and that plaintiff held an agreement, signed by Grable on or about June 4, 1897, under which he was to repurchase the same within six months from the date of said contract, at the option of the plaintiff. The plaintiff further testifies that on the day before Christmas, 1897, he had a conversation with Grable relating to the agreement of the latter to repurchase said stock. In that interview the plaintiff stated to Grable, in substance:

" 'As I wrote you in my note this morning, Mr. Grable, I am tired of running after you, and writing you letters, to have you buy back that stock. If you

don't do so on or before the 1st day of January, I shall immediately bring suit against you, and tell parties that I know that you are negotiating with for the sale of the same stock what I know about you and the company, and that will prevent your selling any more stock;' and he said that would hurt his business and embarrass him, and he didn't want me to do that. He said, 'Now, you have those notes and that Stone stock which I gave you as collateral for a loan of $2,500, and you can keep these as security, if you will give me until the 8th day of January in which to repurchase the stock,' and in the meantime to refrain from carrying out my threat to sue him and from publishing the fact that he failed to keep his word, and that the stock was worthless. I said, 'Well, all right; if you will let me keep those notes and that Stone stock, I will keep quiet and do nothing.' "

Grable testifies that the interview referred to by plaintiff, in which the plaintiff asked him to repurchase said mining stock, took place immediately after the check of December 11, 1897, had been given, and before the plaintiff had been advised whether said check would be paid or not, and that there was no agreement between him and the plaintiff, by virtue of which the latter was to hold the note in suit until January 8, 1898, or any other time. It must be conceded that the testimony of the witness Grable and the plaintiff created an issue of fact, as to whether such an agreement was made as was testified to by the plaintiff, and which the court was required to submit to the jury, unless said agreement was void. In directing a verdict for the defendant, the court held that said agreement was void, because it was founded in part upon an illegal consideration. This conclusion was based upon the threat of plaintiff to tell parties with whom Grable had been negotiating what he knew about him and about the company, and to prevent him from selling any more stock, and upon the plaintiff's statement of Grable's conclusion, that if the plaintiff would refrain from carrying out his threat to sue him, and from publishing the fact that he (Grable) had failed to keep his word, and that the stock was worthless, he would allow the plaintiff to keep the note in suit, and the other securities which he held. After a careful consideration of this feature of the case, we are now of the opinion that the testimony did not warrant the conclusion arrived at by the court on the trial. It does not clearly appear that the threats which the plaintiff made were not such as he had a perfect right to make. To bring this case within the rule of the decisions relied upon by defendant's counsel in support of his contention that the alleged consideration for the transfer of the note in suit from Grable to the plaintiff was void because it was in part illegal, the testimony should have been so clear and unequivocal as to leave no room for doubt on the subject. As the case now stands, this is not so. The only fact clearly and definitely stated in the plaintiff's version of the interview between him and Grable is that the note and other securities which he held were to continue in his possession, in consideration of his forbearance to sue Grable until the 8th day of January, 1898. There can be no doubt that, if this contract was void in part, it was void in toto. But, as we have stated, the evidence upon this branch of the case is not of such a character as to warrant the court in holding, as a matter of law, that any part of the consideration was illegal. That an agreement of forbearance to sue is a good consideration for such a contract as is testified to by

the plaintiff is well established, as will be seen by the following authorities: Bank v. Wixson, 42 N. Y. 438; Seaman v. Seaman, 12 Wend. 382; Boyd v. Cummings, 17 N. Y. 103; Cary v. White, 52 N. Y. 138; Pratt v. Coman, 37 N. Y. 440; Meltzer v. Doll, 91 N. Y. 369. If the court was in error in holding that the alleged agreement between the plaintiff and Grable was void, then, upon the evidence as presented by the present record, the question whether such an agreement was ever made was a question of fact, which should have been presented to the jury. We are of the opinion that it was error to direct a verdict for the defendant, and that the case should have been submitted to the jury upon the question whether the note in suit was held under and by virtue of the agreement testified to by the plaintiff, and denied by Grable.

Plaintiff's motion for a new trial granted, with $10 costs to abide the event.

Motion granted, with $10 costs to abide event.